IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:19-cr-415-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GEOFFREY CHACON,

    Defendant.

## GOVERNMENT'S MOTION FOR SENTENCING REDUCTION FOR DEFENDANT PURSUANT TO U.S.S.G. § 5K1.1

    Defendant Geoffrey Chacon is scheduled to be sentenced on August 27, 2021 at 9:00 a.m. For the reasons set forth below, the United States of America, by Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, through Bryan David Fields, Assistant United States Attorney, and by Corey R. Amundson, Chief of the Justice Department's Public Integrity Section, through John P. Taddei, Trial Attorney, respectfully moves pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") for the Court, in its discretion, to depart downward from offense level 14 to offense level 12 to reflect the defendant's substantial assistant to the government. That offense level yields a corresponding advisory Guidelines range of 10-16 months. The government recommends a sentence of one year and one day, which would be sufficient but not greater than necessary to accomplish the goals of criminal sentencing set forth at 18

1

U.S.C. § 3553(a).

## I. BACKGROUND

The defendant's criminal conduct is detailed in the plea agreement. ECF No. 17. Further information is also set forth in the plea agreement for former 19th Judicial District Judge Ryan Kamada, who pleaded guilty to obstruction for conduct arising out of the same factual circumstances. Plea Agreement, *United States v. Kamada*, 20-cr-174-WJM, ECF No.14 at 6-12 (June 30, 2020) (the "Kamada Plea Agreement").

In short, the defendant obstructed a long-running and complex investigation into an international drug trafficking organization by relaying information about a warrant he received from a sitting state court judge to his cocaine dealer. The defendant was mutual friends with Ryan Kamada, who was then a District Court Judge for the 19th Judicial District, and Alberto Loya, a major source of cocaine in Greeley, Colorado. Early in the morning on April 24, 2019, Kamada called the defendant to tell him about a warrant for a type of tap or tracker. Kamada told the defendant that he had declined to sign the warrant because it referred to Loya. Kamada further told the defendant that law enforcement was watching Loya's house, car, and phone and told the defendant to stay away from Loya. The defendant understood that Kamada was warning him to stay away from Loya so that Chacon would not become a subject of the law enforcement investigation.

The defendant very quickly tried to alert his other friend, Loya. Later in the day on April 24, he tried to warn Loya of the investigation by conveying the

substance of his conversation with Kamada through Chacon's cousin, who was also friends with Loya. Chacon told his cousin that police were watching Loya's house, car, and phone and that he had received this information from Judge Kamada. Chacon instructed his cousin not to refer to Kamada as the source.

The defendant met face-to-face with Loya at a bar in downtown Greeley on May 3, 2019 after a night of heavy drinking. After the initial meet up, the defendant and Loya handed their cell phones to a friend and split off from the group so they could speak in private without fear that the meeting would be recorded on one of the phones. Eventually, they got into the front seat of Loya's car. While in the car, the defendant told Loya the information he had received from Kamada about the search warrant and law enforcement investigation.

After that meeting with Loya, Chacon continued to ask Kamada for more information about the status of the Weld County Drug Task Force ("WCDTF") investigation. Kamada obliged these requests by fabricating additional information about the investigation. For example, Kamada told the defendant that the investigation was ongoing and explained that the warrant for Loya's phone had to be renewed after periods of time. On a subsequent occasion, after the defendant asked for an update, Kamada told him that he had been at a lunch with other judges in the district and had been informed that investigators were pursuing the investigation "the old school way" and that "people are flipping." Kamada further explained that this meant that subjects of the investigation were cooperating with law enforcement by providing information about the drug-trafficking activities of

3

their confederates.

The information the defendant provided to Loya substantially interfered with the WCDTF's investigation. Loya changed his patterns of behavior to avoid the investigation. He also cleaned sites of evidence, which allowed him to evade search warrants executed at his house and office on May 15, 2019.

In addition to helping Loya obstruct the WCDTF's investigation, the defendant engaged in other acts of obstruction that substantially interfered both with the WCDTF investigation and the FBI's investigation into the source of the leak that had allowed Loya to evade the warrants. He deleted texts between himself and Loya to impair efforts by law enforcement to tie him to Loya. He did this by searching for Loya's name in his phone and deleting all text messages in which Loya's name appeared or was mentioned. The FBI and WCDTF were able to retrieve some of the deleted messages from other sources, but many were lost. Chacon's obstruction hampered the FBI and WCDTF's ability to gather evidence related to Kamada's decision to disclose the existence of the ongoing investigation and to determine whether Kamada had made false statements to investigators.

## II.   SUBSTANTIAL ASSISTANCE

The defendant provided substantial assistance to law enforcement in the investigation and prosecution of Kamada for obstructing a federal task force investigation into a drug trafficking organization. Prior to entering his guilty plea, Chacon provided information to federal law enforcement that was instrumental in securing Kamada's guilty plea and eventual jail sentence.

The defendant provided substantial assistance in several ways. On the day the federal investigation into the source of the WCDTF search warrant leak went overt, FBI agents approached the defendant outside his gym at 6 a.m. He was immediately cooperative. The defendant showed agents text messages on his phone between himself and Loya that reflected his purchases of cocaine from Loya. The defendant said that he knew Loya was under investigation because Kamada had told him to stay away from him. He provided a detailed accounting of his conversations with Kamada about the search warrant and WCDTF investigation. He also described the circumstances of the May 3 meeting with Loya detailed above.

The defendant voluntarily turned his phone over to FBI agents and gave them consent to search it. He later participated in several telephone calls with the agents to help them fully access its contents, including information stored in cloud backup services. The phone records provided substantial and important information relevant to the leak investigation, as well as evidence of other official misconduct in which Kamada had engaged while a judge. The federal judge that sentenced Kamada found evidence derived from the defendant's phone highly relevant, particularly when evaluating the nature and circumstances of Kamada's offense and his history and characteristics.[1] Among other things, group text

---

[1] Kamada also voluntarily provided his cell phone to agents. That phone contained additional texts showing that Kamada had leaked warrant information on other occasions. Kamada's cooperation does not reduce the value of the defendant's cooperation. Kamada provided his cell phone to the government after the defendant had already agreed to cooperate and had provided information that would have established probable cause to search Kamada's phone if he had not consented to its search.

5

message chains involving the defendant, Kamada, and others demonstrated that Kamada abused his position to aggrandize himself with his friend group in conversations that demeaned litigants and lawyers who appeared before him.

The defendant conducted one additional interview with the FBI and two subsequent multi-hour proffer sessions with federal prosecutors and FBI agents. He waived any proffer-letter protection. During those subsequent interviews, the defendant admitted to deleting messages from his phone based on his fear of a federal investigation into his ties with Loya. In those interviews, the defendant presented himself as honest, credible, and contrite. If Kamada had not pleaded guilty, the defendant would have testified against his best friend before the grand jury in relation to any indictment presented against Kamada and would have served as the government's most crucial witness at any trial.

Under the Guidelines and considering the facts surrounding Chacon's cooperation, a departure is appropriate. There are five factors the Court may consider in determining the appropriate reduction under § 5K1.1:

> (1) the Court's evaluation of the significance and usefulness of Chacon's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by Chacon;
>
> (3) the nature and extent of Chacon's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to Chacon or his family resulting from his assistance;
>
> (5) the timeliness of Chacon's assistance.

U.S.S.G. § 5K1.1(a).

The defendant's assistance was of significant value to the government. The government's investigation into the unauthorized leak of confidential case information was based largely on circumstantial evidence until law enforcement authorities approached the defendant, he confessed, and agreed to cooperate. The defendant was the only other witness, besides Kamada, to the April 24, 2019 telephone call and was prepared to offer admissible evidence of Kamada's statements during that call. The defendant also provided further context regarding Kamada's leak of the warrant information, which allowed investigators to fully understand the extent of the leaked information and the parties' motivations behind disseminating the confidential information. Accordingly, the defendant should be credited for the "significance and usefulness" of his assistance under § 5K1.1(1) and (3). At no point during his meetings with law enforcement authorities did the defendant attempt to downplay or obfuscate any of his actions in relation to the leak of information. Rather, he immediately and fully confessed and consistently provided truthful and complete information about the offense under investigation. Accordingly, he should receive credit under § 5K1.1(2) and (5).

### III.   SECTION 3553(a) FACTORS AND ULTIMATE RECOMMENDATION

In fashioning a sentence, the Court must address each of the factors set forth at 18 U.S.C. § 3553(a), including the kinds of sentences and the range established by the Guidelines; the nature, circumstances, and seriousness of the offense; the history and characteristics of the defendant; the need to promote respect for the

law; the need to justly punish the offense; and the need to adequately deter criminal conduct and protect the public from further crimes. These factors support the Recommended Sentence of one year and one day of imprisonment.

        **A.**       **The Guideline Range (18 U.S.C. § 3553(a)(4)(A))**

One of the factors the Court must consider is the range recommended by the Guidelines. As estimated in the plea agreement (ECF No. 17 ¶ 30), the base offense level is 14, pursuant to U.S.S.G. § 2J1.2(a), and the defendant should receive a three-level enhancement for substantial interference with the administration of justice, pursuant to U.S.S.G. § 2J1.2(b)(2). With a three-level reduction for acceptance of responsibility the defendant's total offense level is 14. If the Court grants the government's motion, the defendant would be at offense level 12. The defendant has no criminal history points, which puts him in Criminal History Category I. In that category, an offense level of 12 yields a recommended Guidelines Range of 10-16 months' imprisonment. A term of twelve months and one day would thus be consistent with the Guidelines.[2]

Furthermore, the Guidelines range provides a useful framework for evaluating all of the other factors together because it provides a "rough approximation" of sentences that will achieve all of § 3553's objectives. *Rita v. United States*, 551 U.S. 338, 350 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054

---

[2] Prisoners are only eligible for "good time" credit if they have a sentence of more than one year. 18 U.S.C. § 3624(b). The statute provides for 54 days of credit for each year of the prisoner's term. This means that a sentence of 12 months and one day is potentially only a few days longer than one at the bottom of the guideline range.

(10th Cir. 2006). As set forth in more detail below, this conclusion is not an abstract or academic one: the particular facts of this case, viewed through the prism of § 3553(a), fully support a within-Guidelines sentence.

### B. The Need to Avoid Unwarranted Sentencing Disparities (18 U.S.C. § 3553(a)(6))

The defendant and Ryan Kamada pleaded guilty to different obstruction statutes, but their conduct is evaluated under the same section of the Guidelines—Part J, addressing offenses involving the administration of justice. Ryan Kamada's offenses level was higher because he received an enhancement for abuse of a position of trust and did not provide substantial assistance to the government. In his case, the government recommended a sentence of 21 months' imprisonment and opposed Kamada's motion for a variant sentence of probation. Ultimately, the government's objection was overruled, in part, and the variance motion was granted, in part, and Kamada was sentenced to one year and one day in prison. Judgement, *United States v. Kamada*, 20-cr-174, ECF No. 49.

In many ways, the defendant and Kamada are similarly situated. Both had minimal criminal histories. Both had positions of respect within their community and both had records of civic engagement. However, as set forth below, the government views Kamada as the more culpable of the two defendants, without whom the obstructive conduct would not have been possible. The nature and circumstances of this defendant's crime are serious — he intentionally alerted his drug dealer to an investigation — but the defendant was not in the same position of trust as Kamada. Furthermore, Chacon's his history and characteristics, as well as

9

his willingness to cooperate, present more compelling grounds for leniency than Kamada's circumstances, which included a lengthy history of abusing his considerable power as a judge, *see* Sentencing Statement of United States, *United States v. Kamada*, 20-cr-174, ECF No. 34, and a lack of substantial assistance. *United States v. Boscarino*, 437 F.3d 634 (7th Cir. 2006) (recognizing that when a cooperating co-defendant receives a lesser sentence than an equally culpable defendant, there is no forbidden "disparity"). This factor thus weighs in favor of a within-Guidelines sentence, but one that is at the lower end.

### C. The Nature and Circumstances of the Offense and the Seriousness of the Offense (18 U.S.C. §§ 3553(a)(1) and (a)(2)(A))

The defendant took his best friend's generosity and paid it forward in a way that put the lives of police officers at potential risk while they undertook an investigation they did not know had been compromised. He did so selfishly and without regard for the considerable consequences. And it was not a one-time lapse in judgment: the defendant tried to reach out to his drug dealer almost immediately through an intermediary and, when that did not work, arranged to meet face-to-face in a car. Then he kept up efforts to acquire more information from Kamada that might be useful. Finally, when he recognized that vital information tying him to both Kamada's obstruction and his relationship with Loya was on his cell phone, he intentionally destroyed that evidence to avoid accountability. This factor weighs in favor of a within-Guidelines sentence.

### D. The Defendant's History and Characteristics (18 U.S.C. § 3553(a)(1))

The defendant's history and characteristics do not support a variance in either direction. He had a stable upbringing and is otherwise supportive of, and supported by, a network of friends and family. The defendant's substance abuse problem may help explain what happened, but it should not and does not excuse it or mitigate it. Simply put, he took his considerable advantages for granted and made a series of intentional and willfully criminal choices, for which he should be punished.

### E. Deterrence, Respect for the Law, and Just Punishment (18 U.S.C. §§ 3553(a)(2)(A) and (B))

The need to promote general deterrence, respect for the law, and to impose just punishment supports the recommended sentence of a year and a day. The defendant took advantage of his close relationship with a public official to promote his selfish interests in a way that recklessly and needlessly imposed substantial risk on others. The public must see that such obstructive conduct has real consequences and the defendant himself must understand that criminal choices have real consequences in the criminal justice system.

## IV. CONCLUSION

The defendant should receive a departure to reflect the substantial assistance he provided to the government and a commensurate sentence that advances the

11

purposes of criminal sentencing set forth in § 3553(a). For the reasons set forth above, the Recommended Sentence of 12 months and one day of imprisonment does so without being greater than necessary.

Respectfully submitted this 12th day of August, 2021.

|  | MATTHEW T. KIRSCH<br>Acting United States Attorney |  | COREY R. AMUNDSON<br>Chief |
|---|---|---|---|
| By: | s/*Bryan David Fields*<br>Bryan David Fields<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>1801 California St., Ste. 1600<br>Denver, CO 80202<br>Telephone: 303-454-0200<br>Fax:  303-454-0406<br>E-mail: Bryan.Fields3@usdoj.gov<br>Attorney for Government | By: | s/*John P. Taddei*<br>John P. Taddei<br>Trial Attorney<br>U.S. Department of Justice<br>Public Integrity Section<br>1301 New York Ave. NW, Ste. 1000<br>Washington, DC 20530<br>Telephone:  202-514-1412<br>Fax: 202-514-3003<br>Email:  John.Taddei@usdoj.gov<br>Attorney for Government |

## CERTIFICATE OF SERVICE

    I certify that on this 12th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

               s/ *Bryan David Fields*
               BRYAN DAVID FIELDS
               Assistant United States Attorney
               1801 California Street, Suite 1600
               Denver, CO 80202
               Telephone 303-454-0100
               Facsimile 303-454-0402
               Bryan.Fields3@usdoj.gov